Thank you, Your Honor. I'm Daniel Kaplan. I represent the appellant, Victor Diaz-Ozuna, and I'm going to try to watch the clock and reserve two minutes of my time for rebuttal this morning. I'd like to begin with a concession. One of the issues that I raised in this appeal was a Miranda violation. I'm going to concede that that was, assuming it was error, that it was harmless error because of the other evidence of Mr. Diaz-Ozuna's deportation. I would like to turn to another issue that was raised, which is one that the government has conceded, and that is that the admission at the trial of the Certificate of Non-Existence of Record constituted a violation of the Confrontation Clause rights of Mr. Diaz-Ozuna. That concession, of course, the government has made is necessary because this Court held in Orozco-Acosta that the admission of those certificates does violate the Confrontation Clause. The significance is that the government bears the burden of demonstrating that the error, the Confrontation Clause violation, was harmless beyond a reasonable doubt. According to this Court's framing of that standard, it means the Court must be able to confidently say that, on the whole record, the verdict would have been the same, even without that error, even without the admission of that document. That burden has not been carried in this appeal. The government has sought to carry its burden by pointing to other evidence that evidenced what the certificate was introduced to show, which is that Mr. Diaz-Ozuna had not received permission to reapply, to re-enter the United States lawfully. Didn't the government produce the lawful custodian for the A file? They did, and the lawful custodian gave testimony, which is among the things the government has pointed to. That was Donna Twyford. She testified about the A file, but what she didn't say is what's significant here. She did not say that if Mr. Diaz-Ozuna had received permission to apply to re-enter, that it would have been in the A file. That testimony was not given in this case. Notably, there are recent cases in which there was harmless error found in a similar circumstance, but in those cases, the Roscoe-Okoska case and the most recent case is the Valdovinos-Mendez case. The agents in each of those cases testified that had there been permission, it would have been in the A file, and in fact they examined the A file and there was no document showing permission. In this case, the jury would only be able to speculate as to whether there was a certificate or some documentary evidence of permission missing from the A file and whether that absence had any significance. They also called two Border Patrol agents, did they not? Yes, they called Border Patrol agents. All of whom would have prior contact with your client? Yes, and that was another part of what the government pointed to. The agents said that two of them said they asked Mr. Diaz-Ozuna, do you have documents that allow you to be in the country legally? And he said no. There's two problems with treating that as a basis for the jury to find beyond a reasonable doubt, that Mr. Diaz-Ozuna did not have permission. The first problem is that there was no evidence given, there was no testimony given or other evidence given that if he had permission, he would have had some document that he could have pointed to. That's the first problem. The second problem is that the circumstance was they were asking him, do you have documents to show you're here legally? The first time it was during a traffic stop or just after a traffic stop. Now if he says no to that, the jury can only speculate as to whether that means he has no such documents at home in a safe deposit box in his folder anywhere, he has never possessed such documents or does it just mean he doesn't have them on his person? Which is what normally when you're in a traffic stop and they say you're licensed to registration, they expect those things to be produced on the spot. So again, that testimony does not give the jury a basis to find beyond a reasonable doubt that he didn't have permission. It simply creates some basis for speculation. The final thing the government has pointed to as providing a basis for the jury to find that fact, that element of the crime beyond a reasonable doubt, was Agent Twyford's testimony about database searches that she conducted. And again, what's missing from this testimony and this record is what was present in the Orozco-Acosta case and the Bell-Lavignos-Mendez case, which is testimony saying I know something about how these databases work and if there had been permission given to this person, it would have been in these databases. And I searched the databases and I didn't find permission. Well, that first part of the equation, neither Agent Twyford nor anybody else actually gave in this case. No one ever actually testified or no evidence was given to the jury showing that if there had been permission, it would have been in those databases. She did say I searched some databases. She named one and then she said others available to me without saying what they were. And she said she didn't find that he had permission. But again, that was only a little bit of something for the jury to treat as a basis for speculation. And that's basically it. Those are the three prongs, those are the three items of evidence that the government is trying to point to to show the jury had enough to find beyond a reasonable doubt, even apart from the unconstitutionally admitted certificate of non-existence of record. Agent Twyford was subject to cross-examination? She was. And was she asked whether she had in fact searched all databases? Well, she was asked questions relating to her understanding of the databases, how they were constructed, how they were audited, how she knew anything about the accuracy. And she knew essentially nothing. She said that basically she said our society relies on computers. We have to assume that they work accurately. And that's about it. She had no idea how data was inputted, how it was kept accurate, how it was audited, how it was examined. Again, that's another contrast between this record and the records in cases, the cases of Orozco Acosta and Valdomir Nismendez. Those agents had extensive knowledge of how the databases worked, how the information was inputted, how the accuracy was checked. So essentially, you look at all the things the government is pointing to and try to carry its burden to show that even taking out of the equation that certificate, which never should have come in, as they concede, that the jury would still have had enough to find this element beyond a reasonable doubt, and all you find is some scraps for speculation. If there are no questions at this time, I'll reserve the rest of my time for rebuttal. Thank you, counsel. May it please the Court, I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States in this matter. The evidence presented by the government in this case, even if you don't consider the certificate of non-record, which the government does concede should not have been admitted at trial, there was evidence that makes the admission of that certificate harmless beyond a reasonable doubt. First, we had Agent Twyford's testimony about the A-file, and Agent Twyford testified she was the custodian of the A-file at that point, and she testified that she had the A-file in court with her on that date. She described the A-file as containing any documents that pertain or relate to transactions that an individual or alien has had with immigration. So from that, clearly, if there had been some kind of request for readmission, that would have been in the A-file because it contains any documents relating to immigration. You have to concede, as Mr. Kaplan points out, that her knowledge of databases and having searched them is not as complete as the other cases, right? Yes, but what she testified to is she, on cross-examination, she admitted she didn't basically understand the mechanics of the database or how they were maintained in that context. Well, in the other cases, as I understand it, the individual who testified for the government described how information was inputted, the nature of the databases, how many there were, and that a complete search had been done. Is that present on this record? I think you can. I think she testified. I would read the testimony saying a complete search had been done. She went through detail, all the different ways she searched. She searched different variations of the dependent's name. She searched different variations. At one point, she actually says that basically they're not relying solely on the computer, but basically, let me get the exact quote. It's on page 204 of the excerpt. She says, we rely on the A-file, the numbers and the name that's contained in there, and we rely on the multiple databases available to us to make sure everything is confirmed. So she's talking about kind of a cross-check and balance kind of thing to make sure that there is some petition made somewhere that wasn't reflected. So I think the A-file alone is sufficient to establish beyond a reasonable doubt that the admission of this certificate of nonexistence was harmless. But when you add in the computer database and the dependent's admissions, clearly there was more than enough evidence to make it beyond a reasonable doubt. Unless the court has any questions. When you say the defendant's admission, did he admit that he did not have permission? He admitted he hadn't. Let me get you the exact quote. He stated that he did not have any documents to allow him to be in the United States to one officer, and he stated he did not have any documents to live and work in the United States to the other officer. Those are the documents that opposing counsel says one would reasonably deem to mean he didn't have them with him. Is that those documents? I would say you take the defendant's statements combined with the other evidence. He didn't have documents to be in the United States. There was absolutely no indication that he did. All right. Thank you. Thank you. Just briefly, Your Honors, number one, the testimony about the A-file. Excerpts, page 177 to 178. Agent Twyford said, In the A-file contains any documents that pertain or relate to the transactions that an individual or an alien has had with the Immigration Service. Now, the question is, does a lay jury have enough on the entire record here that they've heard to draw a conclusion beyond a reasonable doubt that this means that in this A-file would be a document showing he had permission? Well, they didn't receive any testimony or evidence showing them that requesting or receiving permission to apply to reenter constitutes what she's calling a transaction with the Immigration Service or even to know what the Immigration Service is. The statute refers to permission from, I believe it's the Attorney General, the Secretary of Homeland Security. It's not specifically individuals who are specifically part of the Immigration Service. They oversee many agencies. And Agent Twyford went through many documents that were in the A-file. She described them. She explained what they were. But she did not say there is no document in here showing permission, which, again, is the type of testimony that you did have in Orozco-Acosta and in Valdovinas-Mendez. The second thing the government has referred to again here, they say the database searches, the testimony was complete, or that she testified she did a complete search of the database, Agent Twyford. Well, what she actually said was, I went through all the immigration databases available to me, one of them being the Central Index System, which houses the majority of our immigration information. This is page 201. I went through that database as well as other databases.  That is as specific as she ever gets about what databases she searched. She names one. She says, Others available to me. They could have been Westlaw. They could have been the New York Times database for all the jury had to go on on this record. So that hardly qualifies, especially by comparison to the testimony in cases like Orozco-Acosta and Valdovinas-Mendez. And, again, when she gets to the voir dire right after this portion of the record, she's asked, What do you know about these databases? She says essentially nothing. She says, I just think we should rely on them because our society relies on computers. The final thing, the question of admissions, those are the pieces of evidence that I refer to as something the jury could only speculate as to whether he meant they're asking him on his person or whether he has them at all. And I would just contrast that testimony in this case to what we had in Orozco-Acosta in terms of an actual admission which could plug this kind of a gap in the evidence and create a sound argument of harmlessness beyond a reasonable doubt. In Orozco-Acosta, the government produced the sworn statement of the defendant that he, in fact, didn't have permission to reenter. Now, that would be an admission that might create a basis for a homicidal finding, as it did in Orozco-Acosta. There simply is nothing like that in the record in this case. Thank you, counsel. Thank you. The case just argued will be submitted. The next case for argument is Chichena v. Zubia.
judges: Reinhardt, Hawkins, Gould